Good morning. May it please the court. I'm David Frederick of Lionel Sawyer & Collins on behalf of the appellants Richard Roberts, Jane Roberts, and Regal Property Holdings. Richard and Jane Roberts are British citizens. They reside in Clark County, Nevada. Regal Property Holdings is a Nevada corporation. Those three defendants are also defendants in a British legal proceeding. In that legal proceeding, the appellee here, Stirling Mortimer, saw ex parte and without notice or an opportunity to be heard what is referred to in these proceedings as a worldwide freezing injunction or a worldwide freezing order. It purports to freeze the corporation and other defendants located worldwide. It has reporting provisions and others. But of particular importance here, it authorized Stirling Mortimer to seek enforcement of that worldwide freezing injunction in the United States and specifically the courts of Nevada. Two conditions on that authorization are important. Number one, they were to seek relief as provided in the order, but not superior to that provided in the order. And I'll get to the ways in which they violated that in a moment. But also, their permission was granted quote, on the basis that Stirling Mortimer shall, and that is the word used in the order, seek a stay of the proceedings in the United States immediately after obtaining a TRO or similar relief freezing the assets. Counsel, the question that's really before the panel in my view is whether the preliminary injunction was properly granted, viewed through the lens of the winter test. So there may be all these peripheral facts floating around out there, but how does that affect the analysis of whether the preliminary injunction was properly granted and what element within the winter test does that affect? It would be easier for me to understand, I think, if you argue it through the framework of the winter test, which applies to the issuance of preliminary injunctions. Winter test now requires, and most specifically I think relevant to your question, that there be a likelihood of irreparable injury. Now, in decisions of this Court, that requirement has been recognized and kept without question. There is some question as to whether, as to other requirements, serious issues and likelihood of prevailing, whether the older sliding-scale approach still works. But the requirement of winter that is most important here for the purposes of whether this Court should affirm the injunction is the likelihood of the injunction that freezes the Roberts assets does so expressly and for the purpose of ensuring the ability to recover money damages. And one doesn't have to guess that or infer it. It's stated right spang in their briefs. It's stated in their complaint. Money damages are not irreparable injury. Well, you know, let me interrupt you. They're trying to prevent a dissipation of assets so that in the event of a judgment that there's money around to satisfy it. And I gather through a theory much of this equitable trusts. So there is irreparable harm if it turns out they do get a judgment in the U.K. proceeding. And by the time they come around to enforce it in Nevada, what had been $20 million, I'm making up a number of assets, now all of a sudden we've got 25 cents. That sounds to me like irreparable harm. Irreparable in perhaps the real-world sense and certainly prior to Grupo Mexicano, yes. Clearly under the Marcos decision, which is how they patterned their injunction action here. A RICO claim supported by an accounting claim, a constructive trust claim. That would have been irreparable harm. Marcos clearly says it and lays it out. The problem arises is that Grupo Mexicano suddenly throws a quite different analysis into the equation. And that analysis goes as follows. You have to look at the equitable remedies that are being applied and you have to ask two questions. Number one, is there an equitable interest? And that's the words the Supreme Court uses in Grupo Mexicano. Equitable interest in the assets that you are trying to freeze. It's not enough any longer to say, well, I have a legal claim, a claim to damages, and there may not be assets around because the defendants have dissipated them and therefore I can use an equitable remedy to preserve those assets. There has to be an equitable interest. The second question that arises, and this comes from a combination of two cases, one of which is distinguished in Grupo Mexicano and the subsequent Knutson decision, which is an affirmation of a decision of this court, and that is, are you using a nominally equitable remedy, restitution in the two cases to which I referred, in order to shore up or provide a way to collect money damaged? Now, how does this work? In Grupo Mexicano, the Supreme Court distinguished an earlier case, the Deckert case. Deckert was a case in which the plaintiffs sought rescission of a securities transaction, essentially on the basis of fraud. They sought two equitable remedies, rescission and restitution. And the Supreme Court said that is not the situation in Grupo Mexicano because there, there was, in fact, a bill stated for equitable relief, namely rescission. Restitution went along with it. You get the money back that you paid for the securities. Now we come to Knutson. We've already in the circuit addressed the limits of Grupo Mexicano. In the Johnson case, for example, I think the circuit's been very explicit that the holding of Grupo Mexicano is really limited to cases where only money damages are being sought. And in this particular case, equitable relief is also sought. So how do you reconcile Johnson and other cases in the circuit that have talked about the limits of the Grupo Mexicano holding to your argument? How do you reconcile that? Johnson was an ERISA case. It specifically relies on the portion of the ERISA statute that comes from the fact that Knutson was also an ERISA case. But what Knutson says is even if you invoke a traditional equitable remedy, restitution, if you are trying to get back money damages, you do not state an equitable claim, even if ERISA authorizes equitable relief. And that's the prism that you have to view Johnson through. Because Johnson stops at the point at which the statute authorizes equitable relief. It does not move on to the question of whether the particular equitable relief that you're seeking is in support of truly equitable relief. You cannot simply rely on the nomenclature designations. In this case, we're talking about an accounting and a constructive trust. What do we know about the nature of the relief sought in the U.K. proceeding? Is that simply a damaged action, or is it also an action seeking what might be denominated equitable relief? My knowledge of the British action is that it also seeks monetary relief. Also means something else. So what do you get to before you say also monetary relief? Also, well, misunderstanding. Also in comparison to here. Now, I understand what you're saying. Let me make sure I got the question clear. What do we know about the relief that is sought in the U.K. proceeding? Leaving to one side what's being sought here. My understanding is it is monetary relief. It is damaged. No, no, wait a minute. Monetary relief is not necessarily damages. Right. So what do we know about it? You can't tell me just because it's monetary relief it is necessarily damages. So can you tell me what it is that's sought more precisely than monetary relief? It is the money that has been allegedly misappropriated by the Roberts defendants and eight others. Do we have in the record a copy of the complaint or of any of the orders in the U.K. proceeding? I do not believe so. So we don't know, for example, whether they are requesting an accounting, which would be equitable relief? I'll get to that in a minute, but the correct answer to your question is I don't know. We don't know. We don't know. Well, you know, if we're going to apply Grupo Mexicano in our later cases, I think I need to know what the nature of the relief sought is in the underlying action, because in Grupo Mexicano they say if all you have is a straightforward damages action, we're not going to give you a freezing of the asset or a protective order on the prospect of the damage you might eventually get a judgment. But they're very clear in saying, even in the introduction to that opinion, say, well, this is not, we're not talking about various forms of equitable relief. So I think I have to know what's the nature of the proceeding in the U.K. And you say you don't know. There's a reason for that. Much of the proceeding in the U.K. is like the Worldwide Freeze Order. It is sealed. Even the relief requested is sealed? I don't think. I do not know that. I do not believe it is. But... You know, if you're resisting this on the ground that it doesn't come with it, it comes with a Grupo Mexicano as to say that it's a purely a damage action rather than some form of equitable relief, I should think it's incumbent upon you to tell me what's being sought. But you don't know. I know what is being sought in the action below, and that's the action on which the preliminary injunction that is at issue here was entered. What do you mean the action below? I'm talking about the U.K. action. Is that the same thing you're talking about? I'm talking about the action in the Nevada District Court. But I'm talking about the action that is the underlying premise for why they seek to prevent dissipation of the assets. And as I read Grupo Mexicano, it tells me, okay, if the action that is sort of the underlying action, which they hope they're going to get some money, they hope they're going to get a damage judgment, and therefore, in the hope of that, they go out and they try to freeze some assets, the Court says no. But the Court very specifically says, saves out. Well, we're not talking about a case where the underlying action is seeking equitable relief, liens and so on. So I need to know what's going on in that U.K. action, and you can't tell me. Let me attempt to clarify something that I think goes to your question. I understand you're asking about what the nature of the relief sought is. But let me see if I can explain the difference between the relief that is sought and the cause of action, which I don't know, that seeks that relief. And I'm going to do it by reference to one of the reliefs sought in the Nevada action, and that is an accounting. An accounting is, in fact, an equitable remedy. But as at least one of the courts has carefully analyzed, we've included this in that list of supplemental authorities, that doesn't mean that you can use an accounting for money damages as a basis for freezing. Yeah, but you're now talking about what's going on in Nevada. Right. Which to me is irrelevant. Or I'll say it this way, as I read the Mexicano case, is irrelevant. What's relevant in the Mexicano is what's the nature of the relief sought in the underlying action. As I understand your argument... You and I have a different understanding of the term underlying action, Your Honor. And that's what I was going to say, because as I understand your argument, the underlying action is the action filed before the Nevada District Court. And your analysis is despite the fact that the plaintiffs purport to ask for equitable relief in the form of accounting and a constructive trust, it's really just an attempt to get money damages, and that's why Grupo Mexicano applies. Did I understand your argument correctly? That is correct, Your Honor. But what I don't understand about your argument is why accounting and constructive trust, which essentially seeks to take defendant's assets that's traceable to the criminal or fraud activity, much of which occurred in the U.K., why that accounting of those particular assets that they think are traceable to the fraud, why that's not an equitable right? Why is that not legitimate? Let me respond to that question first. I'll get back to Justice Fletcher's problem hopefully in a minute. One of the cases we cite in the supplemental letter is the Klitschkrupp case. It involves the Lanham Act. The Lanham Act authorizes an accounting as an equitable remedy, quote, unquote, for profits. The Klitschkrupp case goes on, and it discusses Grupo Mexicano and discusses the earlier Reebok case in this court, which also terms unfreezing assets. And it says, wait a minute. Merely because you have an equitable remedy of an accounting for profits doesn't mean you can use an accounting for money damages as the basis for a freezer loan. And that's why I say we have to be particularly careful, and I'll get to constructive trust in a minute. When we talk about equitable claims and equitable remedies after Grupo Mexicano, Grupo Mexicano doesn't talk about either of those in the introduction to which you referred to, Justice Fletcher. The introduction talks about absent an equitable mean or an equitable interest. That's with respect to the assets. Now, where do they try to get their equitable interest in the assets for purposes of their constructive trust claim below? Well, they say you misappropriated money from us at the same time as you bought assets in Nevada. Therefore, I can get a constructive trust over those assets. The problem with all of that is we now go back to what you just raised at the very outset of this argument. It's actually Judge Fletcher in judgment. I think I've terribly insulted this Court. No, no. That's okay. My apologies. And that is the requirement of winter for a likelihood of irreparable injury. As a couple of the cases that we've cited in the supplemental authorities make clear, wait a minute. If you are trying to get a constructive trust over assets that you bought with the money that you're trying to recover in the action, so that those assets are going to be there to satisfy your money judgment in the action, where is the irreparable injury? Because the loss of money at any end of that equation is not irreparable injury. It simply isn't. And whether you call the relief you're asking for a constructive trust over assets that were bought with the money, whether you call it an accounting for the money damages that you claim to have misappropriated, it doesn't matter, because you don't get to the basic and fundamental requirement. Okay. Your time has just expired. We'll hear from the other side, but we will give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court, my name is David Bennion. I'm an attorney from the law firm of Parsons, Bailey & Latimer in Salt Lake City. I'm here for Sterling Mortimer. In order to prevail on their appeal, the defendant appellants need to show that the district judge, district court abused its discretion in issuing this injunction. That has not been shown. Specifically in the case of an injunction, a preliminary injunction, what that abuse of discretion translates to would be a showing of an error of law as a basis for the injunction, or that the district court relied on clearly erroneous findings of fact to support the injunction. Neither one of those things has been shown through this appeal or in the briefs, in the oral argument or the briefs. That standard of abuse of discretion really is where this appeal starts and finishes, because if we go through each of the arguments that they made in their briefs, they do not show legal errors or clearly erroneous findings of fact. What I'd like to do is take a moment and just run through the grounds that they have argued and show why those fail under the standard. The first ground that they argue, and it was mentioned today as well, is that because Sterling Mortimer really intended to seek a stay after it got the injunction, therefore the injunction was wrongful. The problem is intent is not an element in the winter test. The elements for that are irreparable harm, likelihood of success, balance of hardship, and that the injunction favors the public interest. There's no intent element. And so really to try and introduce the idea that, well, okay, you've met the elements of Rule 65, but we're going to look into your heart and see what your real intent is, would create all kinds of mischief and would be absolutely new law in the Ninth Circuit, really in the United States. Intent is not an element. And so it was not an error of law for the judge not to consider intent but instead to look at the elements under Rule 65, which she did. Furthermore, when I prepared the affidavit for the English court to explain to them the procedure of what we do in the United States in a case like this, I didn't say that we would seek a stay. I said that we could, that we may. The judge in England said, okay, I will let you, this is to Sterling Mortimer, I will let you proceed in another case against these same defendants somewhere else, but I want you to seek a stay. That doesn't mean the district court has to grant one. That's even mooted, though, because the next day after the district judge granted the preliminary injunction, the defendant appellant's petition for Chapter 11 bankruptcy and an automatic stay was imposed. And so before we could ever move for a stay, they got one themselves by their own unilateral action. And you wouldn't ever want to say that an injunction should be dissolved just because the party enjoined moved for, or petitioned for bankruptcy. That would create all kinds of... You know, the harder problem for me is the Grupo Mexicano question. Could you address that? Sure. Grupo Mexicano, as it was just interpreted to the court in this last 15 minutes, would result in a situation where virtually every injunction case would be gutted, because in reality, people are trying to recover money in lawsuits. Sometimes they're trying to recover it in different forms, but that's what most of our lawsuits are about. Well, as I read Grupo Mexicano, it says, if the first lawsuit seeks damages and the plaintiff seeking damages, hoping to get a judgment and knowing that the defendant has some assets that may disappear, brings a second action where the assets are located, trying to freeze them to prevent the dissipation, the court says you can't get that. You can get yourself an attachment order after you get your judgment, but you need your judgment first. And the court makes an exception for cases in which a lien or other equitable remedy is sought. So how do we deal with Grupo Mexicano? Because it produces precisely the result you say many plaintiffs seek to avoid. Okay. I understand. The reason that Grupo Mexicano doesn't apply in this case is because of the very same reasons that were articulated by this court in In Re Focus Media and the Johnson case. And I'll quote from In Re Focus. Grupo Mexicano, this is Ninth Circuit, 19, sorry, 2004, 387, F3rd, 1077. And I'm reading it, 1084 and 85. Grupo Mexicano thus exempts from its prescription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyance and cases in which equitable relief is sought. It's a very bright line. I'm sorry. I've got 1084 in front of me. Where are you reading from? I don't want you to read it. I'm reading In Re Focus, 1084 carrying over 1085. Okay. And the sentence begins, I'm sorry, it's just a group of Mexicano thus. Grupo Mexicano thus. Exempts from its prescription. That's the end of the paragraph, right? Yes. Grupo Mexicano thus exempts from its prescription. Oh, that's over the top of 1085. Okay. Yeah. Against preliminary injunction freezing assets cases involving bankruptcy and fraudulent conveyance and cases in which equitable relief is sought. Equitable relief is sought in the original action, right? Well, I don't know that I assume that it means the case that the injunction is being sought in. I don't think I read it that way. The In Re Focus case, I don't believe, related to a situation like we have here where there's two different courts with two different cases. Grupo Mexicano. I'm now on the second column of 1085. The first paragraph at the very top of that column, second column, 1085. Are you with me? Yeah, yeah. I'll wait till you find it. Okay. So I'm on page 1085 of In Re Focus. I'm with you. Okay. I'm on the top of the second column. Grupo Mexicano does not prohibit? Yes. Okay. Grupo Mexicano does not prohibit a preliminary injunction. In this case, Pringle has pleaded a cause of action for fraudulent conveyance and a cause of action for constructive trust, which is equitable in nature. Moreover, the relief ultimately sought includes money damages for the fraudulent conveyance and turnover, imposition of a constructive trust, permanent injunction, which are the same character of the preliminary injunction of the bankruptcy court order. As I read In Re Focus, they're saying this is different from Grupo Mexicano because in the underlying lawsuit in which the remedy is sought, equitable relief is sought, not merely damages. They're not focusing on the nature of the relief sought in the second suit, which is trying to preserve the assets. Okay. And so really what your question gets to, and you asked this earlier, is what was sought in the English action. That's exactly right. I don't have the equivalent of the complaint in the English action here, and I have never seen it. Well, it would be their burden to show what was sought, because they're the ones seeking to avoid your action on that. Correct. However, and I don't want to try and characterize the record because I just don't know what the complaint says. I do know that they sought an injunction in England because it was granted. An injunction to do what? Freeze the assets worldwide. And here's the – and so I highly suspect that there's a cause of action, or whatever they call it there, for equitable relief as in accounting or constructive trust. The injunction to freeze the assets coming out of that English court, which we do know what it is, the so-called WFI. Yes. And that is in the record. That may be enough to bring us into that exception from a group of Mexicans. Yes, because they were clearly seeking an injunction. But here's – I want to make one thing, no matter what else I don't get said today, I want to make this clear.  in Nevada. Those are not just to obtain money. For example, in this case, we have allegations of rampant theft of millions and millions of euros. We know that those euros were converted into property. We don't know where and with whom they are all dispersed throughout the world. In fact, we know that he received legal advice of how to do it, how to dissipate and hide. That creates a constructive trust. If I steal your money and go buy a car with it, you have a constructive trust on that car. It's not just the money. You're really the equitable owner of the car. And so – and here's another difference between just seeking damages like a contract case and go get somebody's – all their assets frozen. That's clearly not allowed. The accounting is also going to be – part of the accounting, the remedy of the accounting is going to be an order that tells, theoretically, if we get to this day, would be an order saying, you tell us where, when, who, how, how much. All these assets are located that you've taken and hidden. And so it's informational. It's not just monetary. The remedy that we're seeking through the accounting is not just money. True, we want to be – we want our money back, of course. But our cause of action is not just for money. It's for an accounting. And it's literally to say, at the end of the day, under the constructive trust argument, it would be a finding that that property in Nevada is not yours anymore, Mr. Roberts. It's Sterling Mortimer's. That's not just money. That's property. What's the procedural posture of the case? Since this preliminary injunction was issued in May, there was a filing of bankruptcy. Anything else? The very next day, yes. And then we petitioned the bankruptcy. We moved the bankruptcy court to lift the stay in England. And that was granted over their opposition. And so then the case proceeded in England, and it has now gone to a default judgment, despite notice and lots of chance for, you know, to appear. There was a hearing set with time in advance and notice to the other side. They consciously, intentionally did not appear, and a default judgment was entered in England. And so we may never – back to this issue about the stay – we may never seek a stay in the United States now, because the case in England has been determined on the merits, not in Nevada. So you've got a final judgment no longer susceptible to appeal that you can then bring and try to enforce here? I don't know the question about appeal, because it's only happened in the last three or four weeks. But I believe that what you said is right if maybe a little more time expires. Okay. Yes. And so the district court, under these set of facts, did not do anything wrong. She followed Ninth Circuit precedent with respect – and cited to her, and that she cited back in her ruling, in her – in Judge Navarro's ruling on the preliminary injunction order, she explicitly walks through Grupo Mexicano Enray Focus Media, Johnson. She clearly was looking at the law. It wasn't like she was just oblivious to these things, and she made her determination. You say you're in a Nevada action. You're suing for a constructive trust? Yes. And an accounting? Yes. So those which you claim are your equitable claims? Correct. But, you know, it's hard to distinguish, you know, in that respect, between a claim and a remedy for a claim. In other words, it seems to me on that kind of a – even if you call it a claim, there has to be some underlying claim, like, you know, I want to impose a constructive trust because he embezzled money from me. Correct. Embezzlement is the underlying claim. Well – In other words, you can't say, well, you know, he ran me over with his car, so I want to impose a constructive trust on his house. Right? I don't think that's true in Nevada because the district court in – Well, you know what? I mean, how does this get to be a real equitable claim as opposed to just a remedy for something else? Right. A plaintiff could bring a one-cause-of-action complaint in Nevada that alleged constructive trust. There wouldn't have to be a conversion or embezzlement or some other kind of claim under it. Well, what are the elements of that claim? The elements – I don't have it memorized, but I believe the elements are that there has to be some sort of relationship between the parties that would – like a relationship of trust, that sort of thing, which we pled. It has to be that the property was taken. I mean, there is that concept. Yeah. There's some sort of a taking concept in it, and then it was converted into some other property. And essentially what that means is if I take your money and put it into some property, it's really yours. So in your constructive trust claim in Nevada, I mean, you pled that the defendants have taken property? Yes, sir. In other words, it's not just like a piggyback on the British action. You know what I mean? It's not just in effect, you know, trying to enforce the British action. No. You're making an independent claim. Correct. It might be duplicative, but you're making an independent claim in Nevada that the defendant converted, stole some money, got a hold of your money, and you want to impose a constructive trust on that money or property. And now they have literally planted that money in Nevada in the form of property, and we're saying that, equitably, that should be our property. Absolutely. And the complaint, which is part of the record, the verified amended complaint, there is a The complaint in the Nevada case, not the complaint in the U.K. case. Yes, sir. In Nevada. So you, then in your view, you would be entitled to simultaneously pursue the Nevada action and then, say, bring another action in this country to enforce the British judgment, or you're not sure of that? Well, that's a bridge we're going to have to cross now that we just recently obtained the domesticate that here, and we may need to just simply combine that in the action we have. We don't want to multiply the litigation. And that's really, I think, why the British judge said get a stay in the United States, because he didn't want the defendants to get whipsawed in two different jurisdictions. Because there's an extra step. You know, if the, your theory in this Nevada case is that the proceeds from the conversion and the fraud would then utilize the purchased properties in Nevada, and you'd have to show that the money used to purchase the properties in Nevada actually came out of this big fraud case that you're litigating. Yes. There has to be a nexus. So to the extent that you can demonstrate the nexus in the Nevada case in the British action, there may not be a need for further litigation. But if you don't cover that in the British litigation, there would have to still be an ongoing lawsuit here. Right. During which you'd have to prove that these particular properties covered by the preliminary injunction were actually purchased utilizing proceeds from this fraud. Did I get that right? I think you're correct about that. And what we have right now, of course, we haven't had any discovery because we're stayed. But what we do have is we have temporal connections between, you know, transfers out of one bank account and days later the purchase of a Lamborghini in Las Vegas. And are you seeking, and this may rearrange my thinking a little bit, so are you seeking in the Nevada case not merely enforcement of a judgment you might get out of the U.K., but you're seeking just independent causes of action for misappropriation of assets with a remedy of constructive trust? Yes, because I think that the United States' courts are sovereign and independent of the English courts. So this could be a freestanding action alleging fraud, theft, misappropriation of assets, whatever it's going to be, breach of trust, seeking those remedies. It has to be. And here's another illustration of that. We could have brought our lawsuit first. Okay. I got it. So I take back some of the things I said about the Nevada case. Thank you. If there's any further questions, just to conclude, the district court did what a district court is supposed to do. She looked at the things you're supposed to look at. She followed the rules you're supposed to follow. Thank you. Would you like one minute? Very briefly, Your Honor. The argument that the district court looked at what she was looked at and came to the right conclusions, the problem with that is detailed in the briefs. It hasn't been discussed here today. The problem is what she looked at was literally no evidence at all. It was a verified complaint. The verification was on everything in the world. Some of it I know. Some of it's based on documents. Some of it's based on my employees. Some of it's based on people I've talked to. Some of it is based on what we learned during an investigation. And, frankly, there was nothing else. There were no documents offered. They had Mr. Tim Clink there, didn't call him as a witness, didn't do anything. You didn't challenge any of those verified allegations, though? Yeah, we disputed them all. Now, the reason why it is in the form of a general denial. You didn't file any affidavits or any proof, evidentiary proof, challenging any of those verified allegations? Specific to the allegations, no. We filed the equivalent of a general denial, and there are medical reasons that are documented in the record for why that was what we were limited to. But you're right. The point I'm getting at is those verified allegations stand unchallenged. And, you know, we have plenty of cases that say, you know, a verified complaint can be viewed as evidence to support an application for an injunction. Right? Two responses, Your Honor. One, they are challenged by way of a general denial. We believe that's enough to put the matter in issue. It's an issue, you know, for the ultimate disposition, but not for the purpose of deciding the preliminary injunction. The question, however, is whether the verification in the complaint is sufficient to, in fact, constitute evidence. And I would refer to the court to the Starr Mortar Imports case, which is discussed in our brief, which separates out two different kinds of verifications. What they're trying to say is that a verification that is on information and belief and less is sufficient evidence to put those allegations in issue. We contend in our briefs documented. Did you challenge a verification in district court? Yes. Then I've got to make a note of this. Okay. Go ahead. All right. Second point I want to talk about, they talk about the fact that upon the filing of our bankruptcy, there is now an automatic stay. And that is quite true. But it's important to recognize what counsel admitted, and that is that they've succeeded in getting the automatic stay lifted with respect to the English action, not lifted with respect to the Nevada action. That means the normal opportunities to change the preliminary injunction don't exist anymore. And the point that needs to be recognized in connection with that is that the provisions of the injunction directly invade the bankruptcy court's power over fees, expenses, and assets. And that's an additional reason why we think the injunction should be vacated. Now, let me talk just for a minute about focus. Let me stop you for just a minute. Have you argued in the district court that they're subject to the automatic stay from bankruptcy and they ought to just cease and desist and dissolve and go away? I mean, what have you said to the district court about the effect of the automatic stay? The effect of the automatic stay, the district court, bankruptcy court, let me clarify what your question is. I ask you, what have you said to the district court, if anything, about the effect of the automatic stay from the bankruptcy court? To the district court, nothing. The matter was first of all referred as an adversary proceeding to the bankruptcy court. It has recently been remanded back to the district court, and nothing has been said to the district court. In other words, the automatic stay of the bankruptcy court doesn't apply. It's been remanded back to the district court. Is that right? What are you telling me? I don't know. The automatic stay continues to apply regardless of what court the action is in until it's lifted by bankruptcy. Okay. So I misunderstood you then. When you said it was remanded back to the district court, I thought that was a lifting of the stay with respect to the proceeding. It was not. Okay. It was not. Just a brief comment about NRA focused media. First of all, I think the description that court puts out about Juvo Mexicana answers your question about what the underlying proceeding is. Secondly, it is important to recognize that in NRA focused media, this was an injunction sought by the trustee in bankruptcy, freezing assets in the hands of a third party on behalf of the bankruptcy estate. That stands in sharp contrast to what we have here, which is a preliminary injunction in favor of one of multiple predators that tries to invade the bankruptcy estate. Okay. Completely different. Thank you very much. Thank you. Sterling Mortimer v. Roberts, submitted for decision. And that concludes our proceedings for the day. Thank you.
judges: Tashima, Fletcher, Nguyen